IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                                :
CHRISTOPHER BOOKER,             :      HON. JEROME B. SIMANDLE
                                :
            Petitioner,         :      Civil No. 09-779 (JBS)
                                :
     v.                         :
                                :          OPINION
UNITED STATES OF AMERICA,       :
                                :
            Respondent.         :
_____:
```

APPEARANCES:

Mr. Christopher Booker
F.C.I. 59010-066
P.O. Box 019001
Atwater, CA 95301
     Petitioner Pro Se

Paul J. Fishman, United States Attorney
by: Steven D'Aguanno, Assistant U.S. Attorney
OFFICE OF THE UNITED STATES ATTORNEY
401 Market Street, 4th Floor
P.O. Box 2098
Camden, New Jersey  08101
     Attorney for Respondent United States of America

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This matter is before the Court on a pro se application by Petitioner Christopher Booker for habeas corpus relief vacating his sentence under 28 U.S.C. § 2255.  On August 4, 2006, this Court sentenced Petitioner to a term of imprisonment of 240 months for possession with intent to distribute cocaine base and

a consecutive term of imprisonment of 60 months for possession of two firearms in furtherance of a drug trafficking felony.

Petitioner's present habeas petition asserts that his defense counsel was ineffective for failing to raise four arguments and that this ineffective assistance of counsel justifies vacating Petitioner's sentence. For the reasons discussed herein, Petitioner's motion for habeas relief under 28 U.S.C. § 2255 will be denied without an evidentiary hearing and his petition will be dismissed.

## II. BACKGROUND

In October 2004, Petitioner was staying at the Best Western Envoy Hotel in Atlantic City, New Jersey. See United States v. Booker, 270 F. App'x 176, 177 (3d Cir. 2008). On October 27, 2004, Officer Paul Petinga of the Atlantic City Police Department saw Petitioner loitering in front of the hotel for over two hours and eventually stopped and questioned him. Id. (citing Terry v. Ohio, 392 U.S. 1 (1968)). Petitioner informed Officer Petinga that he was at the hotel because he had a court appearance later in the morning. Id. Officer Petinga ran a check on the information found in Petitioner's identification card, and no warrants for Petitioner came up in the system. Id. The next day, however, Officer Petinga discovered that Petitioner did have an outstanding warrant. Id.

Two days later, a maid at the Best Western discovered two
firearms in the bathroom trash can of Room 309.  Id.  The maid
immediately notified hotel manager Sunil Pillay.  Id.  Manager
Pillay contacted her friend, Officer Petinga, to ask for
assistance.  Id.  After this conversation with Pillay, Officer
Petinga went with another officer to the hotel, where he
determined from the information on file with the hotel — which
included the occupant's identification card — that the occupant
of Room 309 was the same man he had questioned outside the hotel
two days earlier, Petitioner Christopher Booker.  Id.  Shortly
thereafter, additional officers arrived at the hotel, management
locked out Petitioner by creating a new room key for the officers
to utilize, and the officers knocked and announced themselves at
the hotel room door.  Id.  There was no response from anyone
inside the room.  Id.  Once inside the officers saw the two
firearms in the trash can with some toilet paper resting on top
of them.  Id.  The officers remained while the firearms were
photographed and taken by Identification Bureau personnel.  Id.
Immediately after the firearms were removed the officers set up
surveillance in a room across the hall from Petitioner's room.
Id.  Sergeant Mark Pincus from the Atlantic City Police
Department ran a criminal background check while the other
officers were conducting surveillance, and discovered that

Petitioner had at least one conviction in addition to multiple prior arrests.  Id.

Petitioner returned to the hotel room hours later, and his identity was confirmed both by officers stationed at the front desk and by Sergeant Pincus through the peephole of the other room.  Id. at 177-78.  Pincus along with another officer arrested Petitioner in the hallway after ordering Petitioner to get on his knees.  Id. at 178.  Petitioner immediately asked why he was under arrest, and Sergeant Pincus responded that it was because "the officers found something in [Petitioner's] hotel room."  Id. Petitioner responded "guns?"  Id.  Sergeant Pincus proceeded to handcuff Petitioner and search his person, which included the jacket that Petitioner attempted to kneel on.  Id.  In the jacket Pincus found two packages containing approximately 149 grams of crack cocaine.  Id.  Subsequent to the arrest, Petitioner consented to a search of the hotel room.  Id.

Once in custody, Pincus sought to question Petitioner, but Petitioner invoked his right to counsel, so questioning ceased. (Suppression Hr'g Tr. 81:10-25; 82:1-11.)  Sometime prior to November 30, 2004, Darby Borough detectives contacted Special Agent Roselli of the Federal Bureau of Investigations ("FBI") on behalf of Petitioner to explain that Petitioner wanted to talk to Agent Roselli regarding his knowledge of a bank robbery.  (Id. at 169:1-11.)  In response to Petitioner's request to meet with her,

on November 30, 2004, Special Agent Roselli met with Petitioner
in Atlantic County where he was in custody.  (Id. at 169:6-11.)
Before questioning Petitioner, Agent Roselli gave Petitioner an
Advice of Rights form, which she used to advise him of his rights
under Miranda v. Arizona, 384 U.S. 436 (1966), and Petitioner
signed the form waiving his rights.  (Id. at 169:18-25; 170:1-18,
171:1-7.)  Even though Petitioner asked to speak with Roselli
solely regarding the bank robbery, he voluntarily made statements
to her pertaining to the Atlantic City drug and firearm charges.
(Id. at 172:7-11.)  Petitioner met with Special Agent Roselli on
several subsequent occasions, and before every interview Agent
Roselli gave Petitioner an Advice of Rights form, which he
initialed and signed thereby waiving his rights.  (Id. at 169:18-
25; 170:1-18; 171:1-7.)

On January 19, 2005, a grand jury in the Eastern District of
Pennsylvania returned a three-count indictment charging
Petitioner with "conspiracy to distribute and possess with intent
to distribute more than 50 grams of cocaine base in the Eastern
District of Pennsylvania and the District of New Jersey, in
violation of 21 U.S.C. § 846, possession with intent to
distribute approximately 149.5 grams of cocaine base . . . in
violation of 21 U.S.C. § 841(a)(1), and possession of two
firearms in furtherance of a drug trafficking felony, in
violation of 18 U.S.C. § 924(c)" [Docket Item 13 at 9].  On April

25, 2005, after Petitioner was arraigned in Philadelphia, he filed a motion to change venue to the District of New Jersey, which was granted [Id.].  Prior to his trial, this Court held a hearing on Petitioner's motion to suppress evidence seized — the two firearms and the 149.5 grams of cocaine base — as well as all post-arrest statements that Petitioner made to law enforcement [Id. at 10].  Petitioner's motion to suppress was denied by this Court in its entirety.  United States v. Booker, No. 05-313, 2005 WL 2217023, at * 1 (D.N.J. Sept. 9, 2005).  At that hearing Officer Petinga testified regarding the reasons he, along with fellow officers, went to the hotel to search Petitioner's room for firearms.  (Suppression Hr'g Tr. 11:17-25; 12:1-25.)  As part of his testimony, Officer Petinga stated that one of the reasons he went to the hotel was because of the maid's statements to the manager regarding the presence of guns.  (Id.)  At the suppression hearing and at trial, the only witness testimony that pertained to the content of the maid's statements came from Officer Petinga and the maid's manager and was offered to explain why the police searched Petitioner's hotel room.[1]  (Id.; 136:2-23; 137:3-24; 145:3-23; 150:25; 151:1-25; 152:1-2); see also (Tr. 1/25/06 at 5:19-25; 7:25; 8:1-8; 23:20-25; 38:1-22; 39:1-3;

---

[1] Although Pincus's testimony did reference the maid, he only explained that she was not interviewed by law enforcement, so it did not pertain to the content of the maid's statements. (Suppression Hr'g Tr. 61:13-21; 77:17-21); see also (Tr. 1/26/06 at 21:6-10.)

52:21-25; 53:1-6; 58:19-25.)  There was no testimony by the maid
at the suppression hearing or at the trial.

At trial evidence was also offered regarding the guns and
their use "in furtherance" of Petitioner's drug offenses.
Petinga explained how the officers entered the room, that the
guns were close to the entrance to the hotel room — and in plain
view — and how the guns were confiscated.  (Tr. 1/25/06 at 41:11-
25; 42:5-25; 43:3-25; 44:1-24; 55:18-25.)  Special Agent Roselli
testified that Petitioner "admitted [to her during an interview]
that the guns and the crack cocaine that he was caught with [at
the hotel] were in fact his," and she also testified about
voluntary statements Petitioner made regarding his ownership of
the firearms and drugs — while he was being transported to
Philadelphia by her and other law enforcement officers.  (Tr.
1/27/06 at 170:1-8; 177:22-25; 178:1-13; 179:1-15.)  Detective Ed
Obert offered additional evidence about how the firearms were
processed by himself and the rest of the Identification Division
of the Atlantic City Police Department.  He explained that the
weapons were a nine millimeter semi-automatic handgun and a
forty-caliber semi-automatic handgun, both of which were loaded,
and he examined both of the Government's exhibits identifying
them as Petitioner's firearms found in the hotel with
accompanying magazines (ammunition).  (Tr. 1/25/06 at 69:8-25;
70-73; 80-83:9.)  Detective Sergeant James Ryan of the Atlantic

City Ballistics Unit, also testified as to the type of firearms found and stated that the found guns were loaded with additional ammunition.  (Tr. 1/26/06 at 36-43.)  Sergeant Pincus also testified about Petitioner's arrest and how drugs were found on Petitioner.  (Tr. 1/25/06 at 119-120.)

On February 1, 2006, a jury convicted Petitioner of possession with intent to distribute approximately 149.5 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), and possession of two firearms in furtherance of a drug trafficking felony in violation of 18 U.S.C. § 924(c).  The jury acquitted Petitioner of conspiracy to distribute and possess with the intent to distribute cocaine base under 21 U.S.C. § 846.  On August 4, 2006, this Court sentenced Petitioner to a term of imprisonment of 240 months for possession with intent to distribute and a consecutive term of imprisonment of 60 months for possession of firearms in furtherance of the drug transaction.  The Court of Appeals for the Third Circuit affirmed the decision of this Court denying Petitioner's motion to suppress on March 19, 2008.

On April 8, 2009, Petitioner filed the instant supplemental motion under 28 U.S.C. § 2255.  Petitioner bases his motion on ineffective assistance of counsel for failure of his attorney to argue four issues at trial or on direct appeal, which are: (1) there was insufficient evidence to support the "in furtherance"

element of the drug trafficking charge in violation of 924(c);
(2) all post-arrest statements by Petitioner to law enforcement
should be suppressed because they were obtained in violation of
Miranda; (3) evidence seized from Petitioner's hotel room was the
product of an illegal search and seizure, and warrantless entry
of Petitioner's hotel room; and (4) admission of evidence at the
suppression hearing and trial of the maid's statements about the
guns found in the Petitioner's hotel room violated the
Confrontation Clause [Docket Item 10].

## III. DISCUSSION

### A. Standard of Review

When considering a § 2255 petition the Court must hold an
evidentiary hearing, unless the record and motion of a case
conclusively indicate that the movant is not entitled to relief.
United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).  The
Court is required to accept the Petitioner's factual allegations
as true so long as they are not "clearly frivolous," which the
Court can establish by examining the existing record.  Id.
Nevertheless, should the movant's petition contain "vague and
conclusory" allegations it is at the Court's discretion to
dispose of it without further inquiry.  United States v. Thomas,
221 F.3d 430, 437 (3d Cir. 2000).

### B. Standard for Ineffective Assistance of Counsel

In <u>Strickland v. Washington</u>, the Supreme Court articulated
the standard for measuring ineffective assistance of counsel.
466 U.S. 668 (1984).  The Court held that both prongs of the
<u>Strickland</u> test must be satisfied in order to establish
ineffective assistance of counsel.  <u>Id.</u>  The <u>Strickland</u> test
states that:

> (1) The defendant must show that counsel's performance was
> deficient.  This requires showing that counsel was not
> functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment; (2) the defendant must show that the
> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose results are
> reliable.

<u>Id.</u> at 687.

When examining an attorney's performance, the standard to be
applied is an objective standard of reasonableness where
considering all the facts and circumstances, the petitioner must
demonstrate that counsel's representation fell below the
standard, that is, that the counsel failed to provide "reasonably
effective counsel."  <u>Id.</u> at 669.  The <u>Strickland</u> Court noted that
"[j]udicial scrutiny of counsel's performance must be highly
deferential" and that a "court must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance."  <u>Id.</u>

To satisfy the prejudice prong of the <u>Strickland</u> test, a
petitioner must show that a reasonable probability exists that

"but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.  When applying this test the Supreme Court noted that either the performance and prejudice prongs of Strickland may be addressed first.  In fact, the Supreme Court recommends beginning the analysis with whichever prong is easiest to satisfy or dispose of.  Id. at 697.  For example, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id. at 697.

In order to ascertain whether Petitioner can sustain a valid claim of ineffective assistance of counsel, this Court must determine whether Petitioner's counsel made errors that prejudiced Petitioner, (1) by failing to move to suppress all post-arrest statements, (2) by failing to object to the sufficiency of the evidence for the 18 U.S.C. § 924(c) violation, (3) by failing to seek suppression of the fruits of the warrantless search and arrest, and (4) by failing to challenge the admission of the maid's statements during the suppression hearing and trial.  The Court considers the overarching ineffective assistance of counsel claim in light of Petitioner's four specific underlying allegations and addresses each allegation in turn.

## C. Law of the Case Doctrine

This Court examines the application of the law of the case doctrine to Petitioner's habeas petition because Respondent raises its applicability to two of Petitioner's claims. Respondent argues that because the Third Circuit Court of Appeals addressed two of Petitioner's claims on direct appeal — (1) the legality of the search of Petitioner's hotel room; and (2) whether evidence of Petitioner's statement ("guns?") made at the time of his arrest was admitted in violation of Miranda, 384 U.S. 436 (1966) — he is precluded from raising both claims again in his habeas petition under the "law of the case" doctrine [Docket Item 13 at 7, 22, 25].

Law of the case doctrine[2] provides that once an issue is adjudicated future courts are precluded from re-litigating the

---

[2] The Court recognizes that while the Third Circuit Court of Appeals has applied law of the case to a habeas petition in a non-precedential opinion, see United States v. Daniels, 209 Fed. Appx. 191, 194-96 (3d Cir. 2006), there is some disagreement about whether law of the case doctrine should apply to habeas petitions. See, e.g., Rosales-Garcia v. Holland, 322 F.3d 386, 398 n.11 (6th Cir. 2003) (en banc), cert. denied, 156 L. Ed. 2d, 627, 123 S. Ct. 2607 (stating in dictum that in accord with the First Circuit, the Sixth Circuit thinks law of the case is inapplicable to habeas petitions, but also noting that the Seventh Circuit and the Eleventh Circuit apply the doctrine to habeas petitions). Unless the petitioner claims jurisdictional or constitutional error, the scope of review for habeas is limited to whether the claimed error was "a fundamental defect which inherently results in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). The inquiry is not affected by whether the operative language is "miscarriage of justice" from Hill or "manifest injustice" from the law of the case doctrine.

same legal issue[3] so long as it was expressly or impliedly
decided.  In re City of Philadelphia Litig., 158 F.3d 711 (3d.
Cir. 1998).  Decisions within a case on an issue will be binding
upon future courts reconsidering the legal issue unless deemed an
"extraordinary circumstance," which exists when there is: (1) new
evidence available; (2) a supervening new law is announced; or
(3) the earlier decision was clearly erroneous and would create
manifest injustice.  Public Interest Research Group of N.J., Inc.
v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997);
see Bridge v. U.S. Parole Comm'n, 981 F.2d 97, 103 (3d Cir.
1992).  In order to determine whether or not the law of the case
doctrine applies, the inquiry is two-fold: (1) ascertain whether
or not the issue decided was part of the prior court's holding,
or whether it was dicta; and if it was not dicta, (2) whether it
falls within one of the "extraordinary circumstance" exceptions.
In re City of Philadelphia Litig., 158 F.3d 711 at 718.  Should
the adjudicated issue not fall within one of the exceptions, the
court is precluded from re-deciding it.

     1.   Warrantless Arrest and Search and Petitioner's
           Statement During the Arrest

    Petitioner acknowledged in his habeas petition that the
Third Circuit Court of Appeals addressed the warrantless search

---

[3] This doctrine is not applicable to case dicta.  In re City of
Philadelphia Litig., 158 F.3d 711, 718 (3d Cir. 1998) (citing
Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co., 988
F.2d 414, 429 (3d Cir. 1993)).

of his hotel room on direct appeal, <u>United States v. Booker</u>, No.
06-3725, 2008 WL 744836 (3d Cir. March 19, 2008) [Docket Item 10
at 22].  Specifically, the Appeals Court determined that the
police officers had probable cause to arrest Petitioner, and
therefore the statements made and evidence seized during the
search incident to arrest should not be excluded as "fruit of the
poisonous tree."  <u>Booker</u>, 2008 WL 744836.  Moreover, Petitioner
also acknowledges that the Appeals Court determined that
Petitioner's firearms would have been inevitably discovered in
the hotel room subsequent to Petitioner's arrest regardless of
the legality of the warrantless entry, and that the guns were
also properly admitted into evidence [Docket Item 10 at 22].
However, Petitioner contends that the Third Circuit Court of
Appeals' decision is contrary to Supreme Court precedent in
<u>Payton v. New York</u>.  445 U.S. 573 (1980).  In contrast,
Respondent argues that because the Third Circuit Court of
Appeals[4] addressed this issue on direct appeal Petitioner is
precluded from this claim again because the Appeals Court's
decision is the "law of the case." [Docket Item 13 at 7, 22, 25.]

    Both Petitioner and Respondent are correct that the Appeals

---

[4] The Court observes that an alternative argument is available to
the government on this issue.  Petitioner's counsel did, in fact,
raise these arguments on direct appeal and consequently cannot be
ineffective for failing to raise them, as Petitioner claims.
Even if raised as an independent ground for habeas relief,
however, these claims fail under the law of the case, as will be
discussed.

Court held that probable cause did exist to arrest Booker based on the police officers' knowledge of Petitioner's criminal background and the possession of firearms.  <u>Booker</u>, 2008 WL 744836, at *4.  In addition, the Appeals Court determined that the guns were properly admitted into evidence because they were located in the area secured by the officers after the arrest, and they would have been "inevitably retrieved" from Petitioner's hotel room when the area was secured.  <u>Id.</u>  The Appeals Court found it unnecessary to address Booker's claims contesting the warrantless search of his hotel room and whether there were exigent circumstances because of its holding — namely, the presence of probable cause.  <u>Id.</u>

The presence of probable cause was established, making a determination about Petitioner's warrantless search claim and exigent circumstances allegation unnecessary.  In fact, Petitioner's claims regarding the search of his hotel room and the admissibility of the seized weapons were both addressed by the Appeals Court when it made its determination that the arrest and subsequent search were lawful.  The Court finds that there are no extraordinary circumstances present that would permit this Court to adjudicate these issues as an exception to the law of the case doctrine.  The warrantless arrest was based on probable cause, making both the arrest and subsequent search incident to

the arrest lawful.[5]

The Court is persuaded by Respondent's argument that the decision by the Third Circuit Court of Appeals is law of the case regarding the legality of the search of Petitioner's hotel room and the admissibility of the seized weapons, but disagrees that the Appeals Court decision is the law of the case with respect to Petitioner's Miranda argument concerning the "guns?" statement. The Appeals Court held that because the officers had probable cause for the arrest, that Petitioner's "guns?" statement made during the arrest and the drugs seized in the search incident to arrest were not fruit of the poisonous tree.  Id.  However, the Appeals Court did not address Petitioner's argument that the "guns?" statement was the product of custodial interrogation and therefore, because it was unwarned, violated Miranda.  Booker, 2008 WL 744836.   The mere fact that there was probable cause for the arrest and seizure does not mean that there was no Miranda violation.  Although Petitioner's claim regarding the warrantless arrest and search will not be adjudicated by the Court because the Court is bound by the law of the case doctrine, Petitioner's claim about the "guns?" statement will be addressed by the Court because it does not fall under the purview of the law of the case doctrine.

---

[5] Furthermore, the fact that this issue was raised and litigated on direct appeal belies Petitioner's suggestion that his counsel was ineffective for failing to raise this issue.

**D.    Possession of a Firearm in Furtherance of a Drug Trafficking Crime**

Petitioner argues that his counsel unreasonably failed to challenge the sufficiency of the evidence supporting the charge of possession of a firearm in furtherance of drug trafficking pursuant to 18 U.S.C. § 924(c) [Docket Item 10 at 17].  Booker also alleges that Respondent failed to prove that he had the guns "in furtherance" of drug trafficking because his mere possession of the guns is insufficient evidence to prove this crime, and that he also abandoned the guns because they were in the trash can [Id. at 17, 19-20].  Petitioner argues that the conviction should be vacated and remanded, or an evidentiary hearing be granted to address this issue because his counsel was ineffective for failing to challenge the sufficiency of Respondent's evidence [Id. at 20].

The Third Circuit Court of Appeals in United States v. Perez, reasoned that an appellant's post-conviction challenge to the sufficiency of the evidence "faces an uphill climb" because such a claim places a "heavy burden on an appellant."  246 F. App'x 140, 147 (3d Cir. 2007) (quoting United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998)).  Thus, this Circuit adopts a deferential standard of review, viewing the evidence "in the light most favorable to the government."  Id.  The Court must sustain the verdict if "any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." Id.

For drug trafficking involving the possession of a firearm in furtherance of the felony — pursuant to 18 U.S.C. § 924(c) — the Third Circuit applies the approach it articulated in United States v. Sparrow, 371 F.3d 851 (3d Cir. 2004). The Appeals Court interprets the aforementioned statute as not requiring a "showing that a defendant used or carried a firearm . . . [and that] using or carrying a firearm may be grounds for conviction, [but that] possession in furtherance of a drug trafficking crime also may suffice." Perez, 2007 WL 2189397, at *7. Under the Sparrow standard, "evidence must demonstrate that the possession of a firearm advanced or helped forward a drug trafficking crime," and the following factors can be considered[6]:

> (1) the type of drug activity that is being conducted;
> (2) accessibility of the firearm; (3) the type of the
> weapon; (4) whether the weapon is stolen; (5) the
> status of the possession (legitimate or illegal); (6)
> whether the gun is loaded; (7) proximity to drugs or
> drug profits; and (8) the time and circumstances under
> which the gun is found.

Id. at 853 (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)).

The Sparrow Court held that there is no requirement that the firearm be immediately accessible by a defendant. Id. at 854.

---

[6] This is an illustrative (not exhaustive) list of factors that a court may consider in determining whether the firearms were possessed by a defendant in furtherance of drug trafficking.

However, the "mere presence of a [firearm] is not enough" to find a violation.  Id. at 853.  In order to ascertain whether there was sufficient evidence to show that a violation of 18 U.S.C. § 924(c) existed, in considering a habeas petition, the Court must consider the Sparrow factors, and view the evidence in a light most favorable to the government.

      1.  Sufficiency of "In Furtherance"

Petitioner argues that his counsel, both at trial and on appeal, were ineffective for "refusing to argue that the firearms were not 'in furtherance' of a drug trafficking crime" even though counsel was asked to do so by Petitioner and that the outcome would have been different in regards to this 924(c) conviction had his counsel challenged the sufficiency of the evidence [Docket Item 20 at 3-4, 7-8].  Petitioner further contends that the government failed to produce evidence showing a connection between the drug trafficking crime and the possession of the guns [Docket Item 10 at 18].  Petitioner suggests that because this Court found that the guns were abandoned when he put them in the trash can that Petitioner could not use them in furtherance of a drug trafficking crime [Id. at 20].  Petitioner asks that this Court vacate his conviction or hold an evidentiary hearing to determine whether the guns were possessed by Petitioner in furtherance of drug trafficking [Id.].

Respondent argues that Petitioner's claim is without merit

for failure to satisfy both Strickland prongs [Docket Item 13 at
17].  Respondent contends that there was sufficient evidence to
support the firearms conviction and therefore Petitioner failed
to meet his burden under Strickland because he can not establish
that the outcome of his appeal would have been different if
counsel challenged the sufficiency of the evidence in support of
the Section 924(c) conviction [Id. at 20].  Respondent contests
Petitioner's abandonment claim, and notes that this Court already
determined that even though Booker discarded the guns he may
still have possession under New Jersey criminal law, even if he
no longer retained an expectation of privacy in the firearms [Id.
at 21 (quoting United States v. Booker, No. 05-313, 2005 WL
2217023, *6, n.9 (D.N.J. 2005)].

     The Court finds that Petitioner fails to satisfy the
prejudice prong of the Strickland test.  For this specific
allegation that Court applies the Sparrow factors and considers
the totality of the evidence to ascertain whether sufficient
evidence exists to warrant the Section 924(c) conviction.
Moreover, the evidence is viewed in the light most favorable to
the government.  2007 WL 2189397, at *6 (quoting United States v.
Dent, 149 F.3d 180, 187 (3d Cir. 1998)).  The question regarding
Petitioner's placement of the guns and whether or not they were
abandoned was already decided by this Court when it found under
New Jersey criminal law that Petitioner had possession of the

firearms even though they were in a trash can in his room. Booker, 2005 WL 2217023, at *6, n.9.  Booker, 2005 WL 2217023, at *6, n.9.  The Court explained that the abandonment analysis under the Fourth Amendment differs from the analysis in property law because it turns on "an individual's expectation of privacy, not his property interest in the item."  Id. (citing United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2004)).  Thus, although the firearms were discarded because they were in the trash can, Petitioner possessed them under New Jersey law.  Id.  Petitioner has not provided any basis for rejecting this law of the case and therefore, the Court does not need to address this again.

The time and circumstances under which the firearms were found and the status of their possession by Petitioner provided sufficient evidence for a rational trier of fact to find that they were used in furtherance of his drug trafficking.  The accessability and location of the firearms also supports a finding that Petitioner used them to sell crack cocaine. Evidence was offered at trial to show that Petitioner was staying in the hotel where the guns were found, that Petitioner was found with 149 grams of crack cocaine on his person while about to enter that same hotel room, and that the guns were placed close to the entrance to the hotel room and thus easily accessible to him as he entered or exited his room.  (Tr. 1/25/06 at 5:10-25; 6-13; 37-39:16-25; 40-41; 118:9-25; 119-123; 1/26/06 9-17; 26-

35.)  Petitioner's arrest while attempting to enter his hotel room where the weapons were found, all while in possession of a large quantity of cocaine, along with the fact that both guns were loaded and readily accessible — all of which are Sparrow factors — support a finding that the firearms were in the hotel room for the unlawful purpose of furthering his ongoing drug trafficking.

Petitioner argues that he did not possess the guns in furtherance of selling drugs because they were not located near drugs, which were allegedly found on him [Docket Item 20 at 4-5]. However, the Sparrow Court noted, the Third Circuit and courts in other circuits upheld convictions when the "firearm in question was not easily or immediately accessible."  371 F.3d at 853 (citing United States v. Garner, 338 F.3d 78, 80-81 (1st Cir. 2003)).  Moreover, the fact that the police succeeded in securing the guns and stopping Petitioner's entry does not undermine the fact that, had the police not arrived, those weapons would have been immediately accessible as soon as Petitioner entered his hotel room.  In addition, the firearms were not found in Petitioner's home or a place of business, rather they were found in a hotel room where Petitioner was temporarily staying in Atlantic City, so the presence of them in the room suggests he had a reason to have them in his possession in connection with his drug distribution travel.  Unlike guns found in a residential

home, where there might be a range of innocent reasons for storing firearms, the fact that Petitioner kept firearms in his hotel room where he was also transporting a large quantity of drugs supports the conclusion that he possessed those firearms in furtherance of his drug trafficking offenses.[7]   The guns were not even concealed, rather, they were in the trash can close to the entrance of the hotel room, visible and only slightly covered by some toilet paper.  (Tr. 1/25/06 at 41:11-25; 42:5-25; 43:3-25; 44:1-24; 55:18-25; 69:8-25; 70-73; 80-83:9; 119-120.)

The Court also considers the type of weapon and whether the guns were loaded in its Sparrow analysis.  Testimony at trial revealed that the firearms in Petitioner's possession were a 9 mm semi-automatic handgun and a 40-caliber semi-automatic handgun, both of which were loaded.  (Tr. 1/25/06 at 69:8-11; 71:11-25; 73:11-25; Tr. 1/26/06 at 40:1-5; 41:10-12.)  Further, there was not just one firearm, there were two and they were both loaded with additional ammunition close by, which also supports the conclusion that they were ready for immediate use by Petitioner to further his drug trafficking.  See Sparrow, 371 F.3d at 853-

---

[7] At various points in his petition, Petitioner suggests that someone else brought the guns to his hotel room.  The question for the purposes of habeas review, however, is whether a rational trier of fact could have found Petitioner guilty of possessing firearms in furtherance of his drug offenses.  It is not the Court's role to re-weigh the evidence.  See Dent, 149 F.3d at 187.  Regardless, accepting Petitioner's allegations as true, he kept the weapons in his hotel room, rather than disposing of them.

54; see also United States v. Mackey, 265 F.3d 457, 462 (6th Cir.
2001) (distinguishing the possession of an unloaded firearm with
an accessible, loaded firearm and explaining how the latter is
one way to demonstrate "possession in furtherance").

In toto, considering the facts in a light most favorable to
the government, the status of Petitioner's possession, the type
of guns and the fact that they were loaded, in addition to the
type of drug activity being conducted, and the time and
circumstances under which the firearms were found, it appears
that under the totality of the evidence a rational fact-finder
could easily find beyond a reasonable doubt that Petitioner
possessed the guns in furtherance of his drug trafficking.
Therefore Petitioner cannot succeed in establishing that he was
prejudiced by his attorney's failure to challenge the sufficiency
of the evidence at the suppression hearing or on direct appeal
because with or without a challenge, the evidence is sufficient
to support the Section 924(c) conviction.  Because Petitioner
fails to satisfy both prongs of the Strickland standard his
ineffective counsel claim fails as to the "in furtherance" claim.

**E. Standard for the Suppression of Statements**

Petitioner asserts that all of his post-arrest statements
should have been suppressed, and requests that there be an
evidentiary hearing to determine whether failing to suppress his
statements violated his Fifth Amendment rights under Miranda v.

Arizona, 384 U.S. 436 (1966), and its progeny [Docket Item 10 at
28].  He further alleges that his counsel was ineffective for
failing to seek suppression of the statements because (1)
immediately following his arrest he made the statement "guns?"
before he was read the Miranda warning, and (2) despite invoking
his right to remain silent and his request for an attorney on
October 29, 2004, he was subsequently questioned by law
enforcement — who he asserts initiated all interviews — on
multiple occasions and he never received an attorney [Id. at 29-
30, 33-38].

     As the Supreme Court has repeatedly affirmed, under the
doctrine of Miranda, a suspect in custody cannot be interrogated
by law enforcement without first being informed of and read the
Miranda[8] warning.  Berkemer v. McCarty, 468 U.S. 420, 429 (1984).
A criminal defendant's statements made without such warnings
cannot be introduced into evidence to establish a suspect's
guilt.  Id.  The touchstones for the Miranda rule are the
concepts of custody and interrogation.  In determining whether a

---

[8] The Supreme Court held that the Miranda warning must be
comprised of both the right to remain silent and an explanation
that "anything said can and will be used against the individual
in court."  Miranda, 384 U.S. at 469.  The Court reasoned that
"it is only through an awareness of these consequences that there
can be any assurance of real understanding and intelligent
exercise of the privilege."  Id.  The Court also held that the
Miranda warning must include a right to consult with an attorney
and an explanation that an attorney will be appointed if a
suspect is unable to afford one.  Id. at 472-73.

suspect is in custody, the inquiry turns on whether there is "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotations and citations omitted). This is measured from an objective standpoint, and depends on how "a reasonable person in the suspect's situation would perceive his circumstances." Yarborough v. Alvarado, 541 U.S. 652, 662 (2004). Interrogation for Miranda purposes "refers to any words or actions on the part of the police (other than those normally attendant to an arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Once the warning is given without the presence of an attorney the government has the burden of demonstrating that the suspect "knowingly and intelligently" waived both his right to remain silent and his right to an attorney. Taque v. Louisiana, 444 U.S. 469, 470 (1980).

If a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer is made available to him, or until the suspect himself is the party to reinitiate conversation. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Should a suspect reinitiate conversation, and the conversation in turn becomes interrogative in nature, the question of whether "a valid waiver of the right

to counsel and the right to silence had occurred" is resolved by examining the totality of the circumstances.  Id. at 486 n.9. Under the totality of the circumstances, a court must determine whether the waiver was "knowing and intelligent" and whether the suspect was the initiator of the dialogue.  Id.  Once it is well settled that both requirements were fulfilled, then there is no Miranda violation or infringement upon the suspect's Fifth Amendment right.

    1.   "Guns?" Statement

Booker seeks to suppress the "guns?" statement that he made while being arrested.  He alleges that the incriminating statement was in response to the arresting officer's explanation of why Petitioner was under arrest, [id. at 29-32], and that he made the statement while in custody and being interrogated but before receiving a Miranda warning [Id. at 29].  Therefore, Petitioner argues that this statement should have been suppressed, and that his counsel was ineffective for failing to raise this argument [Id. at 6, 32].

Respondent argues that Petitioner's appellate counsel did raise this issue on direct appeal, that it was addressed by the Third Circuit Court of Appeals, and that because it was addressed by the Appeals Court this Court is precluded from litigating the issue again [Docket Item 16 at 25-26].  Thus, Respondent argues that the Appeals Court decision is the "law of the case." [Docket

Item 16 at 25-26.]

Respondent is incorrect because the Court of Appeals did not address Petitioner's <u>Miranda</u> argument.  <u>Booker</u>, 2008 WL 744836.  Therefore, law of the case doctrine does not apply.  <u>See</u> Part C, <u>supra</u>.  This Court must first determine whether Petitioner was in custody and if so, whether he was interrogated without first being informed of and read the <u>Miranda</u> warning.  <u>Berkemer</u>, 468 U.S. at 429.

Petitioner was in custody while he and Sergeant Pincus spoke, but he was not under interrogation.  Although the statements were made prior to Petitioner being handcuffed, there was a restraint on his freedom of movement — both officers had their guns drawn pointed at Petitioner and told Petitioner he was under arrest — constituting custody under <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983), and <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 662 (2004).  A reasonable person in Petitioner's shoes would perceive that he was in custody at this point because of the significant restraint on his freedom.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 662 (2004).

However, under <u>Rhode Island v. Innis</u>, Petitioner was not being interrogated at the time he asked Pincus why he was under arrest and made the "guns?" statement because he initiated the dialogue, and Pincus's statement — "something we had found in the room" — would not reasonably elicit an incriminating statement.

446 U.S. 291, 301 (1980).  The Supreme Court held that
interrogation exists only when the words or actions of a police
officer — "other than those normally attendant to an arrest and
custody" — are reasonably likely to elicit an incriminating
response from a suspect.  <u>Id.</u> at 301.  Sergeant Pincus gave a
somewhat vague answer to Booker's question; Pincus was not
accusatory nor did he bait Booker to give some retort.  It was
not foreseeable that Sergeant Pincus's honest response to
Petitioner's own question was likely to elicit an incriminating
response from Petitioner.  <u>See id.</u> ("[S]ince the police surely
cannot be held accountable for the unforeseeable results of their
words or actions, the definition of interrogation can extend only
to words or actions on the part of police officers that they
<u>should</u> <u>have</u> <u>known</u> were reasonably likely to elicit an
incriminating response.") (emphasis in original).  Therefore,
even though Petitioner was in custody, the verbal exchange
between him and Sergeant Pincus, initiated by Booker's own
question to Pincus, did not constitute interrogation.  <u>See Rhode</u>
<u>Island</u>, 446 U.S. 291 (holding that even though Respondent was in
custody that he was not under interrogation while in the police
car because police officers could not have reasonably believed
their commentary would elicit Respondent's incriminating response
explaining where the gun was located).

    Without both custody and interrogation, the Court finds that

Petitioner's Fifth Amendment rights were not violated.  Thus, Petitioner fails to establish the prejudice prong of the ineffective assistance of counsel claim because even if his counsel made an objection and raised this issue at the suppression hearing, at trial or on direct appeal, such claim would have been unsuccessful.

    2.   All Other Post-Arrest Statements

    Booker seeks to suppress all post-arrest statements made to law enforcement officials.  He maintains that he first invoked his right to counsel on October 29, 2004 with Delaware County homicide detectives during an interview at the Atlantic County jail, and that because he invoked, all statements that he made to Agent Roselli following this encounter — despite subsequently signing multiple waivers of his rights under Miranda — should have been suppressed [Docket Item 20 at 11].  He claims his counsel was therefore ineffective for failing to seek suppression of Petitioner's statements on these grounds.

    The Government observes that prior to each interrogation by Agent Roselli, Agent Roselli properly advised Petitioner of his Miranda rights and that each time he waived those rights, as documented by the signed Advice of Rights forms[9].  [Id. at 27].

    Despite Petitioner's categorical assertion that his Fifth

_____

[9]Although there seems to be some discrepancy between the December dates provided by the Petitioner and the Government, this does not impact the analysis here.

Amendment rights were violated, the undisputed facts in the
record show otherwise.[10]  The record does indicate — as
Petitioner asserts — that he did invoke his right to counsel with
Sergeant Pincus.  (Suppression Hr'g Tr. 81:10-25; 82:1-11.)
However, the record also shows that Sergeant Pincus stopped
questioning Petitioner upon his invocation. (Id.)  Thus, there
was no Fifth Amendment violation at that time.

     Petitioner also contends that following his invocation that
law enforcement subsequently initiated all interviews with
Petitioner, but the record undisputedly reveals that this
assertion is incorrect.  The evidence shows that Special Agent
Roselli went to speak with Petitioner because Petitioner
requested, through the Darby Borough detectives, an interview
with the FBI regarding his knowledge of a bank robbery.  (Id. at
169:1-11.)  At this first encounter Agent Roselli advised
Petitioner of his rights, and had him sign an Advice of Rights
form — which was also signed by Petitioner before each subsequent
interview.  (Id. at 169:18-25; 170:1-18; 171:1-7.)  Although
Petitioner asked to speak with Special Agent Roselli about
another crime, he voluntarily made incriminating statements to
her pertaining to the present charges.  Agent Roselli may have

_____

[10] Agent Roselli interviewed Petitioner five times, but two of
those interviews were not introduced into evidence.  The
statements that were not introduced into evidence from November 2
and November 10, 2004 are not considered in the Court's
determination.

asked the first question during this initial interview, but it was Petitioner that "initiated" these conversations about the current charges by requesting the interview.  Under Edwards, examining the totality of the circumstances, the record shows that Petitioner was the individual that re-initiated dialogue with law enforcement when he made the request to the Darby Borough detectives to speak with Special Agent Roselli, and he also was the individual to bring up this crime when they first met rather than solely discuss the bank robbery.  (Id. at 172:7-11.)

The second requirement of Edwards, a knowing and intelligent waiver by Petitioner, was also satisfied.  It is undisputed that prior to his interview with Special Agent Roselli he was first read the Miranda warning, and that he signed the FBI Advice of Rights form — which was also dated and signed by Petitioner before each subsequent interrogation.  (Id. at 169:15-25; 170:1-13.)  The Court finds that Petitioner knowingly and intelligently waived his rights to remain silent and to an attorney once he signed and dated the Advice of Rights form presented to him prior to the commencement of the interrogation. (Id. at 169:18-25; 170:1-18; 171:1-7.)

Therefore, because the undisputed evidence shows that Petitioner initiated the interrogation with Special Agent Roselli, and the Court finds that there was a knowing and

intelligent waiver, the statements were not obtained or submitted into evidence in violation of Petitioner's Fifth Amendment rights.  Moreover, nothing in the evidence indicates that Petitioner invoked his right to remain silent or his right to an attorney at subsequent encounters; rather, the Government submitted Advice of Rights forms signed and dated by Petitioner at each subsequent encounter indicating his willingness to talk to all law enforcement personnel.  Therefore, the post-arrest statements made by Petitioner following the November 30, 2004 interview with Special Agent Roselli were properly admitted into evidence by this Court at the suppression hearing.  As a consequence, Petitioner does not meet his burden of proving that he was prejudiced as a result of his counsel's failure to challenge the admission of these statements because even if Petitioner's attorney did raise this issue, the statements would still have been admitted and the outcome of the criminal trial would have been the same.

   **F. Sixth Amendment Confrontation Clause**

   Petitioner argues that the maid's statements regarding the presence of the guns in Petitioner's hotel room should have been suppressed because (1) she is untrustworthy, and (2) they are testimonial yet Petitioner was not given the opportunity to confront her on cross-examination [Docket Item 10 at 26-27]. Therefore, Petitioner asserts that the admission of these

statements was a direct violation of his right to confrontation
under the Sixth Amendment [Id. at 27].

The Confrontation Clause of the Sixth Amendment provides
that "[i]n all criminal prosecutions, the accused shall enjoy the
right . . . to be confronted with the witnesses against him."
U.S. Const. amend. VI.  In the trial context, the Supreme Court
has recognized that "face-to-face confrontation forms the core of
the values furthered by the Confrontation Clause."  Maryland v.
Craig, 497 U.S. 836, 847 (1990) (internal quotations and
citations omitted).  However, the Court has also made clear that
"the right to confrontation is a trial right."  Pennsylvania v.
Ritchie, 480 U.S. 39, 52 (1987) (plurality opinion) (emphasis in
original); see also Barber v. Page, 390 U.S. 719, 725 (1968).  In
fact, the Supreme Court in United States v. Matlock implied that
the right to confrontation does not extend to suppression
hearings.  415 U.S. 164, 174-75 (1974).  Cf. United States v.
Salerno, 481 U.S. 739, 751 (1987) (assessing the statutory
confrontation rights of detainees at Bail Reform Act detention
proceedings under the Fifth Amendment's due process clause
without indicating that the Sixth Amendment is implicated);
United States v. Sanchez, 988 F.2d 1384, 1392
(5th Cir. 1993) ("The right to confront does not extend to
non-trial, in camera settings.").

In addition, the Confrontation Clause "does not bar the use

of testimonial statements for purposes other than establishing the truth of the matter asserted." <u>Crawford v. Washington</u>, 541 U.S. 36, 59 n.9 (2004) (citing <u>Tennessee v. Street</u>, 471 U.S. 409, 414 (1985)).  Rather, it bars the "admission of testimonial statements[11] of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." <u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006) (citing <u>Crawford</u>, 541 U.S. at 53-54).

     1.   <u>Maid Statements and the Confrontation Clause</u>

---

[11] The Court described the "core class of testimonial statements" as follows:

> ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

<u>Crawford</u>, 541 at 51-52 (internal quotation marks and citations omitted).

"Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." <u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006) (citing <u>Crawford</u>, 541 U.S. at 51).  "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." <u>Id.</u>; <u>see also</u> <u>Melendez-Diaz v. Massachusetts</u>, 129 S. Ct. 2527 (holding that non-interrogations may also be subject to the Confrontation Clause, e.g., such as certificates signed by state laboratory analysts that the Court likened to affidavits).

Petitioner argues that all of the maid's statements, as
offered through the manager, regarding the presence of the
firearms in the hotel room should have been excluded during the
suppression hearing and trial because the maid is untrustworthy,
the statements are testimonial, hearsay statements, and because
Petitioner was not afforded the opportunity to cross-examine the
maid about the statements [Docket Item 10 at 26-27]; see also
[Docket Item 20 at 13, 15].  Petitioner further argues that
allowing these statements rather than suppressing them violated
Supreme Court precedent in Crawford, 541 U.S. 36.  [Id.]
Finally, Petitioner alleges that the outcome of the suppression
hearing would have been different had his lawyer challenged the
admissibility of these statements or cross-examined the maid.

Although testimony concerning the maid's statements arose
during the suppression hearing and during trial — without the
opportunity for Petitioner to cross-examine the maid — this Court
finds that Petitioner's Sixth Amendment right to confrontation
was not violated.  Supreme Court precedent in Craig, Ritchie, and
Matlock commands that the right to confrontation remains a trial
right, and as such, does not extend to various pretrial contexts
including suppression hearings.  Craig, 497 U.S. 836 at 847;
Ritchie, 480 U.S. 39 at 52; Matlock, 415 U.S. 164 at 174-75.
Following this precedent, Petitioner's right to confront the maid
at the suppression hearing was not violated because the Sixth

Amendment does not extend to that setting.  Moreover, evidence of the maid's statements were not offered during the suppression hearing to prove that guns were in a hotel room (the "truth of the matter asserted"), but to establish what the police officers reasonably believed when they searched Petitioner's hotel room and arrested Petitioner.  As such, the Confrontation Clause likewise does not apply.  See Crawford, 541 U.S. at 59 n.9.  Even if Petitioner's counsel had raised this issue in the pretrial context, the outcome would not have differed, so Petitioner was not prejudiced by counsel's failure to raise this matter.  Therefore, this claim fails to satisfy the prejudice prong of the Strickland test.

    Petitioner also alleges that because the maid's statements were hearsay they should have been suppressed at trial.  However, the statements by the maid are not hearsay under Supreme Court precedent in Street, Crawford and Davis, and in accordance with the Federal Rules of Evidence because they were not introduced during the suppression hearing or at trial for the truth of the matter — that there were guns in the hotel room — rather, they were introduced to explain the effect on the listener (the manager and later the police).  See Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  It is undisputed by

both Petitioner and Respondent that upon seeing the firearms that the maid contacted her manager, and that it was the manager who in turn contacted the police officer for advice on handling the matter [Docket Item 10 at 16; Docket Item 13 at 29-30]. Therefore, the maid's statements were only relevant to the extent that they contributed to probable cause for the arrest.  The sole purpose of the testimony referencing the maid's statements by Manager Pillay and Officer Petinga was to establish what the officers knew at the time when they went to the hotel room in response to Pillay's call to Petinga.  In fact, at the time that Pillay called Officer Petinga about the firearms, it was unknown to both the manager and Petinga whose room contained the guns. (Tr. 1/25/06 at 5:21-25; 10:14-25; 11:1-25.)  It was only through further investigatory work by law enforcement once at the hotel that they established before entering the room that it was Petitioner's room (Id.)  Therefore, Petitioner's allegations that the maid's statements were the core of the criminal case against him and that all of the government's witnesses' testimony referenced what the "maid said" are both misguided and false.

The maid's statement to her manager was not "testimonial" under Crawford.  It was made in the context of her employment duties to alert her manager to the potentially deadly discovery she made.  She is not a "witness" who would have believed that her advice to the manager would be available for use at a later

trial within the meaning of <u>Crawford</u>, 541 U.S. at 51-52.  The
maid did not even make this statement to a police officer
conducting an investigation.

During Petitioner's trial only two witnesses, the manager
and Officer Petinga, specifically referenced the maid's
statements.  The purpose of the statements, as discussed above,
was to explain why the officers investigated who was staying in
the hotel room, and subsequently why they went to the room to
confiscate the firearms.  Therefore, the maid's statements were
not the core of the case against Petitioner, rather, they were
one of many variables that established probable cause for
Petitioner's arrest under the totality of the circumstances.[12]
Her statements were not offered to prove Petitioner's guilt nor
were they offered for the truth of the matter.  As a result, the
introduction of these statements did not implicate either the
Confrontation Clause nor the hearsay doctrine.  <u>See</u> <u>Crawford</u>, 541
U.S. at 59 n.9; Fed. R. Evid. 801(c).

Thus, because the Court finds that the statements were not
offered for the truth of the matter, and because they are not
testimonial in nature, there was also no violation of

---

[12] In addition, the Third Circuit Court of Appeals noted that the
presence of the firearms would have been verified — without the
maid's statements — following Petitioner's arrest because they
were located in Petitioner's hotel room, a secured area.  <u>Booker</u>,
2008 WL 744836, at *3-4.

Petitioner's rights under the Confrontation Clause at trial.[13]

Consequently, Petitioner is unable to satisfy the prejudice prong

of the Strickland test.  Petitioner's counsel was not ineffective

for failing to object to the inclusion of the maid's statements —

and Petitioner was not unfairly prejudiced — because the

statements were clearly admissible.  Due to Petitioner's

inability to satisfy the prejudice prong under the Strickland

test, the petition will be denied on this ground.

**IV. CONCLUSION**

For the foregoing reasons, Petitioner's habeas petition will

be denied and no evidentiary hearing will be granted.[14]  The

Court finds that the record of this case conclusively

demonstrates that Petitioner is not entitled to relief.[15]  The

---

[13] The Court's determination that Petitioner had no right to
confrontation at the suppression hearing and that the maid's
statements were not hearsay eliminates the necessity for the
Court to address whether or not the statements are testimonial.

[14] On June 3, 2010, the Court granted Petitioner's unopposed
request for transcripts of the opening and closing arguments from
his underlying criminal proceedings, Crim. No. 05-313 (JBS),
without cost pursuant to 28 U.S.C. § 753(f) [Docket Item 19].
However, Petitioner's receipt of the transcripts will not affect
the Court's holding for two reasons: (1) the Court's decision in
this matter turned on whether there was prejudice, not whether
Petitioner's counsel raised issues in either the opening or
closing arguments; and (2) the Court gave Petitioner the
opportunity to raise all potential claims in the Miller Order,
[Docket Item 11], which Petitioner declined to do as stated in
his letter to the Court filed on July 16, 2009 where he asked the
Court to make its ruling on the § 2255 Petition.

[15] The Court also determines that there is no ground on which a
certificate of appealability should issue under 28 U.S.C. §
2253(c) because the Court finds Petitioner fails to make a

accompanying Order shall be entered.


**July 26, 2010**                              **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               United States District Judge

---

substantial showing of the denial of a constitutional right.